**E-FILED on** 9/20/2013

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FLORENCIA MONDRAGON, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>JESUS FERNANDEZ, et al.,<br><br>　　　　Defendants. | No. C-08-05772 RMW<br>(Consolidated with C-08-05721)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

**Nature of Case and Procedural History**

By order dated May 13, 2011, the above two cases were consolidated for trial. Plaintiffs Florencia Mondragon and Alma Yadira claimed that while they worked for defendant Jesus Fernandez dba Maria's Nightclub and Tony's Pool Hall, respectively, they were not paid overtime wages and were not provided the required 30 minutes duty free, non-disturbed meal periods when they worked more than five hours per day. Defendant denied that either plaintiff was paid less than she was owed. The case went to trial before a jury on March 26 through April 2, 2012.

The jury returned a verdict in favor of Yadira under California Labor Law and awarded her $1980 for unpaid overtime wages and $980 as a penalty for not paying all wages due at the time of the termination of her employment. The jury also found in favor of Yadira on her Federal Fair

FINDINGS OF FACT AND CONCLUSIONS OF LAW—No. C-08-05772 RMW(Consolidated with C-08-05721)
SW

Labor Standards Act claim and awarded $1980 for unpaid overtime wages and an identical amount for liquidated damages for a total award of $3960 on her federal claims.

The jury returned a verdict against Florencia Mondragon on her claims under the FLSA but did not reach a unanimous verdict on her claims under California Labor Law. The issue on which the jurors could not unanimously agree was whether Mondragon fell under an exemption for executive employees under California state law and, thus, whether she was entitled to overtime wages for overtime hours. California law is generally more protective of employees on this issue than is federal law.

At a subsequent case management conference setting the date for the retrial of Mondragon's claim for overtime wages, Mondragon stated she would only be pursuing "her UCL claims for unpaid overtime and [would] dismiss the remaining claims within a week." Ct. Mins. 5/13/2013, Dkt. No. 105. Trial was set for September 4, 2013. *Id.* Mondragon did not actually file the promised dismissal until shortly before trial began on September 4.

## Defendant's Rule 52(c) Motion

After plaintiff made her opening statement, defendant Fernandez made a motion under Federal Rule of Civil Procedure 52(c) for judgment in his favor. He argued that since Mondragon had dismissed all her claims save for the unfair competition claim under California Business & Professions Code § 17200, she had no viable claim for unpaid wages. He argued that the § 17200 claim was derivative of her California Labor Code and FLSA claims and since those claims had been dismissed, Mondragon had no basis on which to assert a claim. Fernandez claimed support for his theory based on several cases which state that where the underlying unlawful act for a UCL claim has been dismissed, there is no act which satisfies the required element of a UCL claim that the defendant have committed an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prac. Act § 17200; *see, e.g., Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1494, 1554 (2007); *White v. Starbucks Corp.*, 497 F. Supp 2d 1080, 1089-90 (N.D. Cal 2007).

Fernandez's motion overlooks the reality of what occurred. The cases cited by defendant involve situations in which the proof failed to show an underlying unlawful act and, therefore, there was no underlying unlawful act. Here, plaintiff's pleading makes clear that she was making her

UCL claim based upon alleged underlying California Labor Code and FLSA violations. By dismissing the separate claims for overtime wages under California Labor Law and FLSA, plaintiff did not intend to dismiss those clams with prejudice. Mondragon was merely simplifying her claims and proceeding under the UCL were she could collect four years of unpaid wages as restitution as opposed to only three years available under the California Labor Code. *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-790 (2000).

Only three witnesses testified at the retrial: Florencia Mondragon, Georgina Romero and Jesus Fernandez. Only one exhibit was received: a photograph of Mondragon in a Maria's uniform.

## Findings of Fact

Jesus Fernandez has owned Maria's Night Club since 1995. He also owns Flamingo's Night Club, Tony's Pool Hall and a liquor store. In 1997 he hired Mondragon as a waitress at Maria's and approximately six months later, and having been impressed by her work performance, hired her as the manager of Maria's. Fernandez spent three or four months training Mondragon as a manager. After she was trained as the manager, Mondragon had complete control of the on-site operation of Maria's. She worked as manager until May 5, 2008[1] when her employment was terminated. As manager she worked from 1:00 p.m. until approximately 1:45-2:00 a.m. These hours remained the same during her employment at Maria's although when business slowed down in her last year at Maria's, she opened the night club at 3:00 p.m. one day a week. She worked six days a week during her last few years at Maria's. She assigned another employee as her replacement on the days she did not work. When Mondragon began working as a manager at Maria's she was paid a salary of $500 per week and received tips as additional compensation. By the time her employment ended, she was paid a salary of $850 a week according to Fernandez and $700 a week according to Mondragon. Neither witness's testimony was entirely credible. Mondragon was always paid in cash and generally paid herself by taking money from the cash register at Maria's and leaving a note for Fernandez advising as to what she took. Mondragon stated in a real estate loan application dated March 16, 2006, that she had monthly income of $8,250 and $0.00 overtime and held the position of

---

[1] Mondragon testified at the retrial that her employment ended in May of 2007. This appears to be in error. She testified at the original trial that she was let go in May of 2008 and the pretrial filings reference that date.

FINDINGS OF FACT AND CONCLUSIONS OF LAW—No. C-08-05772 RMW(Consolidated with C-08-05721)
SW 3

"MANAGER/REST AND BAR." Although the income figure on the application may have been inflated, it does suggest that Mondragon made more than she acknowledged at trial and that she viewed herself as a manager and not as an employee who was entitled to overtime compensation. Fernandez failed to produce records showing records of payments. W-2's which were introduced at the original trial were not re-offered. Despite the questionable nature of the evidence on Mondragon's salary, the court is convinced that Mondragon earned a salary (not including tips) of at least $600 a month in 2004 through 2006 and $700 a month in 2007 and 2008.

As manager of Maria's, Mondragon had a key and opened and closed the business. She supervised the employees and did the hiring, although she claims she received confirmation of her actions from Fernandez. During her tenure, Maria's had up to eight employees and three bartenders working at the same time. The number of employees working at the same time dropped to approximately three at the slowest period. Mondragon prepared the employees work schedules and was the one who authorized days off and made decisions to cut back employees' hours when business was slow. She participated in the maintenance of the employees' time cards but the evidence was not clear as to the extent of her involvement with time cards. She did the ordering of food and liquor, decided when to offer food, made the arrangements for musicians, oversaw the cleaning people and made arrangements for security personnel. She oversaw the bartenders but did some bartending herself. She picked the uniforms for the employees. She was responsible for dealing with customer or employee issues. Mondragon had discretion to drink with the customers if she chose to do so.

During the time that Mondragon was the manager at Maria's, Fernandez was managing Flamingo's, another business he owned. He occasionally stopped by Maria's in the evenings but management of Maria's was Mondragon's responsibility.

Georgina Romero was hired by Mondragon in 2005 to be a waitress at Maria's. She is still employed by Fernandez but works at his liquor store. In 2005 when she worked at Maria's, Romero viewed Mondragon as the manager of Maria's but knew it was owned by Fernandez. Romero confirmed that Mondragon handed out the work schedules and assigned the appropriate uniforms to be worn.

Mondragon performed some non-executive tasks while at Maria's. She tended bar, stocked inventory and at least at times wore the same outfit as did the waitresses. However, even when physically doing non-executive type work, Mondragon at the same time was overseeing and managing the operation of the business. The evidence was unclear as to the time Mondragon spent performing exclusively executive functions, doing non-executive tasks or doing both types of work at the same time. However, it appears clear that quantitatively, Mondragon's spent more than 50% of her time performing managerial duties.[2]

## Conclusions of Law

The critical question is whether Florencia Mondragon fell under an exemption for executive employees, and, therefore, was not entitled to overtime wages under California law. The burden is on the employer to prove by a preponderance of the evidence that the employee falls under this exemption. *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 794-5 (1999). Further, since overtime protections were enacted to protect employees, exemptions from statutory mandatory overtime provisions are narrowly construed. *Id.* at 794.

In order for Fernandez to have proven that he was not required to pay for overtime because Mondragon was an executive employee, he must have shown each of the following by a preponderance of the evidence: (1) Mondragon's duties and responsibilities involved management of Maria's Nightclub; (2) Mondragon customarily and regularly directed the work of two or more employees; (3) Mondragon had the authority to hire or terminate employees, or her suggestions as to hiring, firing, promotion or other changes in status were given particular weight; (4) Mondragon customarily and regularly exercised discretion and independent judgment; (5) Mondragon was primarily engaged in duties that meet the test of the exemption; and (6) Mondragon's monthly salary was equivalent to no less than two times the state minimum wage for full-time employment. *In re United Parcel Service Wage and Hour Cases,* 190 Cal. App. 4th 1001, 1114 (2010). The retrial focused on whether Fernandez met his burden of showing that Mondragon "primarily engaged in"

---

[2] At the original trial Mondragon attempted to break down the time she spent doing non-managerial work compared with the time she performed executive responsibilities and asserted that she spent more than 50% of her time performing non-exempt tasks. For some reason, she did not offer similar testimony at the retrial.

exempt duties. In her pre-trial brief, Mondragon also asserted that she made a salary that was less than two times the state minimum wage for full-time employment. Pl.'s Pre-trial Br. 2, Dkt. No. 106. The evidence with respect to each of the required elements for exempt status is discussed below.

### 1. Mondragon's Duties and Responsibilities Involved Management of Maria's Nightclub

The evidence was clear and undisputed that Mondragon was hired by Fernandez as the manager of Maria's Nightclub and did manage the club for approximately eleven years.

### 2. Mondragon Customarily and Regularly Directed the Work of Two or More Employees

Mondragon supervised and directed the work of the employees at Maria's including waitresses, bar tenders, and security personnel.

### 3. Mondragon Had the Authority to Hire or Fire Employees or at least Had Significant Input on Such Actions

Mondragon acknowledged that she did the hiring at Maria's but testified that her decisions were subject to Fernandez's approval. Fernandez testified Mondragon had full authority to hire and fire. Romero testified that she was interviewed and hired by Mondragon. Mondragon also picked the employee who would be in charge on her days off. Whether or not Mondragon had complete authority to make personnel decisions at Maria's, she clearly had significant input.

### 4. Mondragon Customarily and Regularly Exercised Discretion and Independent Judgment

Fernandez testified that Mondragon had absolute control in managing Maria's although she could call him if she wanted. Mondragon customarily and regularly exercised discretion and independent judgment in managing Maria's. Mondragon confirmed that she even paid herself out of Maria's receipts on Saturday night. Mondragon made the decisions on what and when food would be served at Maria's, what hours employees would work and she could call in extra help, if needed. She also drank with customers, if she wanted.

### 5. Mondragon Was Primarily Engaged in Exempt Duties

Under California law an employee is "primarily engaged in" exempt duties only if more than 50% of the employee's work time is devoted to such duties. Cal. Labor Code § 515(e). This

quantitative test is somewhat difficult to apply when an employee performs exempt and non-exempt duties at the same time. Almost all the duties that were discussed at the retrial which Mondragon performed were exempt duties. She was the manager, supervised employees, set employees' shifts, ordered food and liquor, arranged for security and music, and opened and closed the nightclub. However, she also performed non-exempt duties such as bartending. Mondragon was not supervised by anyone on a day-to-day basis and she decided what functions she needed or wanted to perform (for example, she at times sat and drank with customers). The court is satisfied that the evidence established that more than 50% of her time was spent performing exempt duties. Therefore, she was "primarily engaged in" exempt work.

**6. Mondragon's Monthly Salary Was Equivalent to No less than Two Times the State Minimum Wage for Full-time Employment**

Although plaintiff failed to offer evidence at the retrial as to California's minimum wage during the four years prior to the filing of her suit, it appears—taking judicial notice of California's applicable minimum wage—that she earned more than twice the minimum wage. California's applicable minimum wages were:

| Years | California Minimum Hourly Wage for Employees | Required Minimum Monthly Salary to Qualify as Exempt | Monthly Salary Paid to Mondragon as Manager of Maria's[3] |
|---|---|---|---|
| 1/1/2008/-5/17/2008 | $8.00 | $2,773.33[4] | $3,033.33[5] |
| 1/1/2007 - 12/31/2007 | $7.50 | $2,600.00[6] | $2,600.00[7] |
| 12/22/04-12/31/2006 | $6.75 | $2,340.00[8] | $2,600.00 |

---

[3] These estimates are based upon inferences drawn from the evidence. Both the testimony of Fernandez and Mondragon on what Mondragon was paid was not credible as they appear to have agreed to report less than what Mondragon actually took as a salary. W-2's which were received at the original trial were not re-offered or received at the retrial. The figures used in the table are the court's conservative conclusions as to the salary paid (not including tips) based upon the testimony at the retrial.

[4] ($8.00 per hour x 40 hours per week x 52 weeks ÷ 12 months) x 2

[5] $700.00 per week x 52 weeks ÷ 12 months

[6] ($7.50 per hour x 40 hours per week x 52 weeks ÷ 12 months) x 2

[7] $600.00 per week x 52 weeks ÷ 12 months

[8] ($6.75 per hour x 40 hours per week x 52 weeks ÷ 12 months) x 2

The court concludes that Mondragon was paid a salary that was equivalent to at least twice the minimum wage as is required to qualify as an exempt employee.

## Judgment

The court concludes that the evidence establishes that Mondragon was an exempt employee. Therefore, she is not entitled to recover overtime wages from Jesus Fernandez, individually, or doing business as Maria's Nightclub.

The parties are to submit a proposed form of judgment covering both Alma Yadira's claim and Florencia Mondragon's claim. If the parties disagree on whether Yadira is entitled to recover both her waiting time penalty under California law and her liquidated damages claim under federal law, they should file a brief not to exceed 5 pages in length supporting their respective positions. The proposed form of judgment and any brief must be filed by September 30, 2013.

DATED:     September 20, 2013

RONALD M. WHYTE
United States District Judge